UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL SAMUEL HUDSON, JR., <br><br> Petitioner, <br><br> v. <br><br> MELISSA ANDREWJESKI, <br><br> Respondent. | Case No. C21-5920-RSL-SKV <br><br> REPORT AND RECOMMENDATION |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Michael Hudson is a state prisoner who is currently confined at the Coyote Ridge Corrections Center in Connell, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2019 Clark County Superior Court judgment and sentence.  *See* Dkts. 4, 4-1.  Respondent has filed an answer addressing Petitioner's federal habeas claims and has submitted relevant portions of the state court record.  *See* Dkts. 7, 8.  Petitioner has filed a response to Respondent's answer.  Dkt. 9.  This Court, having reviewed Petitioner's petition, all briefing of the parties, and the balance of the record, concludes that the petition should be denied, and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II.     FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's convictions as follows:

> Between March 1, 2012 and August 5, 2017, Hudson raped his daughter who was less than 12 years old on four separate occasions, and he raped his son who was less than 12 years old on one occasion. During this time period, Hudson photographed his daughter engaging in sexually explicit conduct on four separate occasions. Hudson distributed the images of his daughter.
>
> Hudson was initially charged with seven counts of first degree child rape, two counts of first degree child molestation, five counts of first degree possession of depictions of a minor engaged in sexually explicit conduct, and five counts of sexual exploitation of a minor. The State expressed its intent to seek exceptional sentences on all counts because if Hudson were convicted on all counts, the high offender score would mean certain counts would go unpunished. In exchange for reduced charges, Hudson ultimately pleaded guilty to ten counts, which included five counts of first degree child rape, four counts of sexual exploitation of a minor, and one count of first degree dealing in depictions of a minor engaged in sexually explicit conduct.
>
> In the statement of the defendant on plea of guilty, Hudson outlined the underlying facts supporting each count. The parties stipulated that Hudson would be subject to the indeterminate sentencing scheme for certain sex offenses under RCW 9.94A.507. Hudson acknowledged that the trial court could impose an exceptional sentence outside the standard range.
>
> The minimum sentence standard range for counts one through five was between 240 and 318 months. The statutory maximum term was life imprisonment. In a pretrial settlement agreement attached to the statement on plea of guilty, the parties stipulated that for counts one through five, the State would argue for 288 months for each count, a minimum sentence within the standard range, while Hudson would argue for 240 months for each count. For counts six through ten, the parties agreed to the top of the minimum sentence standard range. The parties stipulated that all counts should run concurrently.
>
> The parties also attached a list of "Stipulated Conditions of Sentence and of Community Custody" that included a condition that Hudson not possess or consume alcohol without prior approval and that he shall not possess or consume any controlled substances without a lawful prescription. Clerk's Papers (CP) at 24 (capitalization omitted). Hudson stipulated to these conditions "as well as any additional conditions suggested by the [Department of Corrections] Pre-Sentence

REPORT AND RECOMMENDATION
PAGE - 2

Investigator as being conditions of community custody and conditions of the sentence." CP at 22 (emphasis omitted). Hudson also stipulated that all the conditions were "'crime-related'" under RCW 9.94A.703(3). *Id*.

The pre-sentence investigation submitted by the Department recommended a prohibition on Hudson's possession or consumption of alcohol, marijuana, and any nonprescribed controlled substances. For sentencing, the Department recommended confinement within the standard range.

At sentencing, on counts one through five for first degree rape of a child, the trial court imposed an exceptional upward sentence and ordered a minimum term of 365 months for each count, with a maximum of life. On counts six through nine, the trial court ordered a term of confinement of 120 months. On count ten, the trial court ordered a term of 116 months. All sentences were to be served concurrently. The trial court imposed lifetime community custody for counts one through five. One condition of community custody prohibited Hudson from possessing or consuming alcohol without prior approval from the Department and all treatment providers.

The trial court adopted findings of fact and conclusions of law to justify the exceptional sentence. The trial court included eight aggravating circumstances in its findings of fact. The first five circumstances aligned with provisions under RCW 9.94A.535(3), while the last three were nonstatutory. The three nonstatutory aggravators were: (1) all of the crimes "had a lasting and severe negative impact on the mental health of the victims," (2) "[t]he breadth of sexual abuse toward[] the victims in [counts one through nine] was pervasive," and (3) Hudson "continued acts of criminal sexual behavior toward[] the victims in [counts one through nine] after [he] became aware of a police investigation . . . about whether he had committed sexual abuse against his children." CP at 61. The trial court noted that it "would impose the same sentence if only one of the grounds . . . [was] valid." *Id*.

Defense counsel objected to the trial court's findings of fact, conclusions of law, and exceptional sentence, noting that "[n]one of the aggravating factors found by the [c]ourt were included in the information, that my client [pleaded] guilt only to the crime and without any aggravators and that he did not waive his right to a jury trial with regard to any of the aggravators." Verbatim Report of Proceedings (Mar. 18, 2019) at 69.

Dkt. 8, Ex. 3 at 2-4.

REPORT AND RECOMMENDATION
PAGE - 3

### III.    PROCEDURAL BACKGROUND

A.    **Direct Appeal/State Collateral Review**

Petitioner appealed his judgment and sentence to the Washington Court of Appeals. Dkt. 8, Exs. 4-6. On April 6, 2021, the Court of Appeals issued an unpublished opinion in which it affirmed Petitioner's convictions, but remanded the case for resentencing upon concluding that the exceptional sentence imposed on counts one through five was improper. *Id.*, Ex. 3. Petitioner thereafter filed a motion for reconsideration which was denied by the Court of Appeals on May 18, 2021. *Id.*, Exs. 7-8. Petitioner next filed a *pro se* petition for review with the Washington Supreme Court. *Id.*, Ex. 9. The Supreme Court denied the petition for review without comment on October 6, 2021. *Id.*, Ex. 10. The Washington Court of Appeals issued its mandate terminating direct review on October 12, 2021. *Id.*, Ex. 11.

On November 30, 2020, while his direct appeal was pending, Petitioner filed a *pro se* personal restraint petition in the Washington Court of Appeals. *See id.*, Exs. 12-14. The Court of Appeals issued an order dismissing the petition on June 22, 2021. *Id.*, Ex. 15. Petitioner filed a motion for reconsideration in the Court of Appeals, which was transferred to the Washington Supreme Court for treatment as a motion for discretionary review. *See id.*, Exs. 16, 18. Petitioner subsequently moved to amend his motion for reconsideration to replace it with an actual motion for discretionary review, and that motion was granted. *See id.*, Exs. 17-18. The Supreme Court Commissioner denied Petitioner's motion for discretionary review on August 19, 2021. *Id.*, Ex. 18.

//

//

REPORT AND RECOMMENDATION
PAGE - 4

B. **Federal Habeas Proceedings**

On May 13, 2019, less than two months after Petitioner's judgement and sentence was entered in the Clark County Superior Court, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Washington, which was subsequently transferred to this District. *See Hudson v. Uttecht*, No. 3:19-cv-5422-RJB, Dkts. 1, 3. That petition was later dismissed without prejudice based on Petitioner's failure to exhaust his state court remedies. *Id.*, Dkts. 19, 21. Petitioner appealed the dismissal of his petition to the Ninth Circuit Court of Appeals, but his request for a certificate of appealability was denied. *Id.*, Dkts. 23, 27.

Petitioner submitted the instant petition for writ of habeas corpus to this Court for filing in December 2021. *See* Dkt. 1. The briefing is now complete, and this matter is ripe for review.

## IV. GROUNDS FOR RELIEF

Petitioner identifies the following five grounds for relief in his petition:

GROUND ONE: The State of WA denied my 5th Amendment right to a Grand Jury, as proscribed by the Supreme Law of the Land, for an infamous crime before charging.

GROUND TWO: Denied equal protections of the law & of due process because of constitutionally vague state law.

GROUND THREE: Denied access to the courts when DOC refused to allow access to the law library to complete & file a timely writ of certiorari to the U.S. Supreme Court.

GROUND FOUR: Prosecution used intimidation, threats & coercion to force Petitioner into plea of guilt.

GROUND FIVE: The State of Washington, by & through State actors, failed to uphold its end of the plea agreement at sentencing.

*See* Dkt. 4 at 5, 7, 8, 10, 12.

REPORT AND RECOMMENDATION
PAGE - 5

## V.   DISCUSSION

Respondent concedes that Petitioner fairly presented his claims to the Washington Supreme Court either on direct appeal or collateral review. Dkt. 7 at 4. Respondent argues, however, that Petitioner is not entitled to relief with respect to any of the claims asserted in his federal habeas petition. *See id*. at 13-25.

### A.   Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Analysis**

      *1.     Right to a Grand Jury*

Petitioner asserts in his first ground for relief that his Fifth Amendment rights were violated when the State of Washington failed to present his case to a grand jury before charging him. Dkt. 4 at 5. Petitioner asserts in his second ground for relief that the denial of a grand jury violated his rights to equal protection and due process. *Id*. at 7. Petitioner raised his claims

relating to his right to a grand jury in his personal restraint proceedings (*see* Dkt. 8, Exs. 12, 17), and both the Washington Court of Appeals and the Washington Supreme Court summarily rejected the claims on the grounds that Petitioner did not have a federal constitutional right to be charged by grand jury indictment (*id*., Exs. 15, 18). The state courts reasonably rejected Petitioner's claims.

It has long been settled that state criminal defendants, such as Petitioner, do not have a federal constitutional right to be indicted by a grand jury. *Hurtado v. People of State of California*, 110 U.S. 516 (1884) (Rejecting claim that grand jury indictment is essential to due process and it is a violation of the Fourteenth Amendment for a state to prosecute a defendant by criminal information). This rule has been specifically applied to the State of Washington's practice of prosecution by information. *Gaines v. Washington,* 277 U.S. 81, 86 (1928); *Jeffries v. Blodgett*, 5 F.3d 1180, 1188 (9th Cir. 1993). The decision of the state courts was entirely consistent with United States Supreme Court precedent and, thus, Petitioner's federal habeas petition should be denied with respect to his first and second grounds for relief.

      2.     *Access to Courts*

Petitioner asserts in his third ground for relief that he was denied access to the courts when the Department of Corrections refused to allow him access to the prison law library to prepare and file a timely petition for writ of certiorari with the United States Supreme Court in his prior federal habeas action. Dkt. 4 at 8. This claim is, in essence, a challenge to the conditions of Petitioner's confinement.

The Supreme Court has explained that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is

REPORT AND RECOMMENDATION
PAGE - 8

to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas corpus proceedings are therefore the proper mechanism for a prisoner to challenge the "legality or duration" of his confinement.  *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citing *Preiser*, 411 U.S. at 484).  A civil rights action, in contrast, is the proper mechanism for challenging "conditions of ... confinement."  *Badea*, 931 F.2d at 574 (citing *Preiser*, 411 U.S. at 498–99).

This federal habeas action constitutes an attack by Petitioner on the validity of his Clark County Superior Court convictions.  Petitioner's complaints about the conditions of his confinement, and how those conditions affected his ability to litigate a *prior* habeas action, are beyond the scope of this Court's review in the instant action.  Petitioner's federal habeas petition should therefore be denied with respect to his third ground for relief.

        3.     *Voluntariness of Guilty Plea*

Petitioner asserts in his fourth ground for relief that the prosecution used intimidation, threats, and coercion to force Petitioner into entering a guilty plea.  Dkt. 4 at 10.  In particular, Petitioner claims the prosecutor coerced his guilty plea by threatening to seek an exceptional sentence if Petitioner chose to go to trial, and by amending the charging document multiple times to add charges.  *Id*.  Petitioner also appears to claim that the conditions of his lengthy pre-trial confinement at the Clark County Jail had a coercive effect on his decision to plead guilty.  Dkt. 4-1 at 16.

Due process requires that a guilty plea be both knowing and voluntary.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the

alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Alford v. North Carolina*, 400 U.S. 25, 31 (1970)).

A guilty plea is voluntary only if the defendant was made fully aware of the direct consequences of the plea and the plea was not the result of threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755 (1970). A guilty plea is intelligently made if the defendant was advised by competent counsel, was made aware of the true nature of the charges against him, and nothing in the record indicates that he was incompetent. *Id*. at 756. When considering the voluntariness of a plea, a reviewing court must examine all of the relevant circumstances surrounding the plea. *Id*. at 749.

Statements made by a criminal defendant contemporaneously with his plea are to be accorded great weight. *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986) (citing *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). The Supreme Court has made clear that "the representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73–74.

The state courts, on direct appeal, rejected Petitioner's challenge to the validity of his guilty plea:

> Hudson claims that his guilty plea is invalid because his plea agreement was obtained via threats, intimidation, and coercion. Hudson specifically asserts that the prosecutor threatened to add more charges if the plea deal was not accepted and intimidated Hudson because he was being held in the Clark County Jail. Hudson requests withdrawal of his guilty plea.
>
> A prosecutor's discretion in plea bargaining is not "'unfettered,'" and prosecutors may not exercise their discretion in a manner that violates due process. *State v. Moen*, 150 Wn.2d 221, 227, 76 P.3d 721 (2003) (quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)).

REPORT AND RECOMMENDATION
PAGE - 10

> But otherwise, prosecutors are vested with broad discretion when determining whether to charge a crime or enter into a plea bargain. *Moen*, 150 Wn.2d at 227.
>
> Hudson does not cite to any case that concludes that either a prosecutor's threat to bring more charges or the general jail environment coerces a defendant to such a degree that due process is violated. We hold that this claim is meritless because the prosecutor was within their discretion to indicate that Hudson could face additional charges should he decline the plea deal. Moreover, Hudson noted in his signed statement on plea of guilty that he made the plea freely and voluntarily, and that no one threatened him in order for him to plead guilty. When the trial court asked at Hudson's plea hearing whether he made the plea freely and voluntarily, Hudson responded that he did and that no one had threatened to harm him. Hudson may not withdraw his guilty plea on this basis.

Dkt. 8, Ex. 3 at 10.

The record confirms that Petitioner acknowledged at the time he entered his pleas that he had reviewed the plea documents with counsel and that he understood the contents of those documents. *Id.*, Ex. 20 at 5. Petitioner also acknowledged that he understood the rights he was giving up by pleading guilty, that he was making his plea freely and voluntarily, and that no one had made any threats or promises to cause him to make his plea. *Id.*, Ex. 20 at 6-7, 17. Finally, Petitioner affirmed that the written statement contained in the plea documents which provided the factual basis for the charges was true. *Id.*, Ex. 20 at 7-19. These acknowledgements, made in open court, carry a strong presumption of verity.[1] *Blackledge*, 431 U.S. at 74. And, indeed, the trial judge, after engaging in the plea colloquy with Petitioner, found that Petitioner's plea was "knowingly, intelligently and voluntarily made." *Id.*, Ex. 20 at 22.

Petitioner fails to overcome the presumption that his pleas, consistent with his own statements at the plea hearing, were knowingly and voluntarily made. It is notable that after

---

[1] These acknowledgements are also consistent with those contained in the Statement of Defendant on Plea of Guilty that Petitioner executed prior to entering his pleas. *See* Dkt. 8, Ex. 2.

REPORT AND RECOMMENDATION
PAGE - 11

entering his pleas, but prior to sentencing, Petitioner sought to withdraw his guilty pleas, apparently based upon the representation provided by his attorney. *Id.*, Ex. 20 at 26-28. New counsel was appointed for Petitioner for purposes of preparing a formal motion to withdraw the pleas. *See id.* However, Petitioner thereafter changed his mind and decided he did not want to withdraw his pleas. *Id.*, Ex. 20 at 42-43. While Petitioner is apparently conflicted as to whether he should have entered the pleas in the first instance, nothing in the record suggests that he was coerced into doing so. Petitioner's federal habeas petition should therefore be denied with respect to his fourth ground for relief.

### 4. *Breach of Plea Agreement*

Petitioner asserts in his fifth ground for relief that the State of Washington failed to uphold its end of the plea agreement at sentencing. Dkt. 4 at 12. More specifically, Petitioner complains that though the prosecutor explained to the sentencing judge that there was an agreement between the parties that allowed the state to argue for a twenty-four-year sentence and Petitioner to argue for a twenty-year sentence, the sentencing judge refused to abide by that agreement and imposed an exceptional sentence. *Id.* Petitioner presented his argument regarding the state's alleged breach of the plea agreement to the Washington appellate courts on direct appeal (*see* Dkt. 8, Ex. 6 at 2-3, Ex. 9 at 1-6), but the appellate courts did not specifically address the issue, perhaps because they had already invalidated the exceptional sentence. In any event, the record makes clear that this claim is without merit.

In general, considerations of fundamental fairness require that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404

U.S. 257, 262 (1971); *accord Gunn v. Ignacio,* 263 F.3d 965, 969 (9th Cir. 2001); *United States v. Mondragon,* 228 F.3d 978, 980 (9th Cir. 2000). To determine whether a plea agreement has been breached, courts consider what was "reasonably understood" by a defendant "when he entered his plea of guilty." *Gunn,* 263 F.3d at 970; *United States v. Serrano,* 938 F.2d 1058, 1061 (9th Cir. 1991).

Petitioner acknowledges in his petition that the sentence imposed by the trial court, which he claims violated the plea agreement, has been overturned and the matter has been returned to the trial court for resentencing. Dkt. 4 at 12. Petitioner asserts, however, that the breach of the agreement rendered the contract between the parties void, and he should therefore have "received a new trial." *Id*. The record before this Court is devoid of any evidence that the prosecutor breached the plea agreement. Indeed, the record demonstrates that the prosecutor, at Petitioner's sentencing hearing, specifically described the agreement to the sentencing court and, consistent with that agreement, argued that the court should impose a sentence of 288 months. Dkt. 8, Ex. 20 at 51-53, 55-56. Petitioner acknowledged at the time he entered his plea his understanding that the sentencing judge was not obligated to follow the sentencing recommendation agreed to by the parties. *Id*., Ex. 20 at 12. The fact that the sentencing judge disregarded the sentencing recommendation therefore provides no basis for relief.

Petitioner suggests in his petition that the prosecutor somehow influenced the sentencing judge and offered support for the exceptional sentence. Dkt. 4-1 at 18. Petitioner maintains that as the judge was "making up his reasons to support his sentence," the prosecutor began handing the judge unspecified paperwork "trying to coax him into specific scenarios for support." *Id*. This allegation is both extremely vague and speculative. In his response to Respondent's

REPORT AND RECOMMENDATION
PAGE - 13

answer, Petitioner explains that what he was attempting to convey in his petition was that "the prosecutor, in a flurry of uncoordinated speed, began thrusting documents up to the judge which were irrelevant to the matter at hand." Dkt. 9 at 18. According to Petitioner, when the judge inquired about what he was being handed, the prosecutor "said something about correcting criminal points." *Id*. Petitioner infers from this interaction that this was not common practice, and was therefore suspicious, and he complains that the defense did not get to see what was presented to the judge. *Id*.

The transcript of Petitioner's sentencing hearing reveals no such interaction between the prosecutor and the judge. At a subsequent hearing, set for purposes of presentation of the judgment and sentence and entry of findings and conclusions with respect to the exceptional sentence, the prosecutor handed the judge a memorandum regarding the correction of Petitioner's offender score, a document the sentencing judge had specifically requested at a prior hearing. *See* Dkt. 8, Ex. 20 at 50, 74-75. Petitioner's suggestion that this interaction was related to, or in any way influenced, the exceptional sentence is completely unfounded.

Petitioner also suggests that the fact that the prosecutor drafted the formal findings and conclusions in support of the exceptional sentence renders the plea agreement void. *See* Dkt. 4-1 at 18-19. However, the record makes clear that the prosecutor, in drafting the findings and conclusions, was merely performing the ministerial task of committing the sentencing court's oral findings to paper. Indeed, at the hearing where the findings and conclusions were presented, the prosecutor made clear that he was not advocating for the exceptional sentence and that it was "up to the Court what it wants to include in those findings." Dkt. 8, Ex. 20 at 70. Petitioner's suggestion that the prosecutor's participation in drafting written findings and conclusions for the

REPORT AND RECOMMENDATION
PAGE - 14

sentencing court somehow constitutes a breach of the plea agreement is completely without merit. For the foregoing reasons, Petitioner's federal habeas petition should be denied with respect to his fifth ground for relief.

### C. Evidentiary Hearing

Petitioner, in his response to Respondent's answer, asks that the Court hold an evidentiary hearing in this matter. Dkt. 9 at 2-3. The decision to grant an evidentiary hearing lies within the discretion of the Court. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Court "must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474 (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. As explained in detail above, this Court concludes that the record in this matter precludes habeas relief. Accordingly, an evidentiary hearing is not warranted.

### D. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

### VI. CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's petition for writ of habeas corpus be denied, and that this action be dismissed with prejudice.  This Court further recommends that a certificate of appealability be denied.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 10, 2022**.

DATED this 18th day of May, 2022.

_S. Kate Vaughan_
S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 16